## VENTURA GROUP VENTURES, INC., Plaintiff–Appellant,

v.

VENTURA PORT DISTRICT; Ventura Port District Public Facilities Corporation; Ventura Port District Public Improvement Corporation; The Board of Port Commissioners of Ventura Port District; Federal Deposit Insurance Corporation, as Receiver for the Merchants Bank, Kansas City Missouri, LYW Ventura Harborview Limited Partnership and Great Western Bank; Board of Supervisors of Ventura County, Defendants–Appellees.

No. 97–55269.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 9, 1999.

Decided June 28, 1999.

Before: BROWNING, THOMAS and WARDLAW, Circuit Judges.

We certify the following questions to the Supreme Court of California as set forth in the attached request:

1. Does Article XIII A of the California Constitution (adopted in 1978 by statewide initiative as Proposition 13) prohibit a county from levying property taxes, in excess of the one percent limit, pursuant to California Harbors and Navigation Code § 6361 to pay a money judgment as required by California Government Code §§ 970–971?

2. Does a port district created pursuant to California Harbors and Navigation Code § 6210 have independent authority to impose assessments under California Harbors and Navigation Code § 6365(d)(2) in order to raise the funds needed to satisfy a judgment obtained against it?

We stay all further proceedings in this case in this court and the district court pending receipt of the answers to the certified questions. If the Supreme Court of California declines certification, we will resolve the issues according to our perception of California law.

The Clerk of the Court is hereby directed to transmit forthwith, under the official seal of the Ninth Circuit, a copy of this order, the attached Request for Certification, and copies of all briefs and excerpts of record submitted to this court to the Supreme Court of California. This case is withdrawn from submission until further order of the court.

## REQUEST FOR CERTIFICATION DIRECTED TO THE SUPREME COURT OF CALIFORNIA

Pursuant to Rule 29.5 of the California Rules of Court, a panel of the United States Court of Appeals for the Ninth Circuit, before which this appeal is pending, hereby certifies to the Supreme Court of California questions of law concerning the interplay of Article XIII A of the California Constitution and California's statutory writ of mandate providing for the payment of judgments by local public entities. The California courts provide no controlling precedent on this question.

The answers to the certified questions will be determinative of a part of this appeal. We respectfully request that the Supreme Court of California answer the certified questions presented below. Our phrasing of the issues should not restrict the Court's consideration of the issues.

### I. Caption of the Case

Ventura Group Ventures, Inc., is deemed the petitioner in this request because it is appealing the district court's ruling on this issue. The caption of the case is:

VENTURA GROUP VENTURES, INC., Plaintiff–Appellant,

v.

VENTURA PORT DISTRICT; VENTURA PORT DISTRICT PUBLIC FACILITIES CORPORATION; VENTURA PORT DISTRICT PUBLIC IMPROVEMENT CORPORATION; THE BOARD OF PORT COMMISSIONERS OF VENTURA PORT DISTRICT; FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for the Merchants Bank, Kansas City Missouri, LYW Ventura Harborview Limited Partnership and Great Western Bank; BOARD OF SUPERVISORS OF VENTURA COUNTY, Defendants–Appellees.

Counsel for the parties are as follows:

For Ventura Group Ventures: John R. Johnson and Carol J. Covington; Heily & Blase; 594 Poli Street; Ventura, California; 93001–2633; telephone: (805) 667–4970

For Ventura Port District: H. Jess Senecal and Thomas S. Bunn III; Lagerlof, Senecal, Bradley, Gosney & Kruse, LLP; 301 North Lake Avenue, Tenth Floor; Pasadena, California; 91101; telephone: (626) 793–9400

For Board of Supervisors of Ventura County: James L. McBride, Lawrence M. Matheney, and Robert R. Orellana; Office of County Counsel; 800 South Victoria Avenue; Ventura, California; 93009–1830; telephone: (805) 654–2579.

### II. Questions of Law to be Answered

1. Does Article XIII A of the California Constitution (adopted in 1978 by statewide initiative as Proposition 13) prohibit a county from levying property taxes, in excess of the one percent limit, pursuant to California Harbors and Navigation Code § 6361 to pay a money judgment as required by California Government Code §§ 970–971?

2. Does a port district created pursuant to California Harbors and Navigation Code § 6210 have independent authority to impose assessments under California Harbors and Navigation Code § 6365(d)(2) in order to raise the funds needed to satisfy a judgment obtained against it?

### III. Statement of Facts

Ventura Port District ("the District") was organized by the County of Ventura in 1952 as a local governmental entity to operate and develop the Ventura Harbor in Ventura County, California. The District was created pursuant to California Harbors and Navigation Code § 6210. *See* Cal. Harb. & Nav.Code § 6210. The District is governed by a board of port commissioners pursuant to section 6240. *See id.* § 6240.

In 1979, the District leased real property along the harbor to Ocean Services Corporation ("Ocean"), a corporation that had agreed to develop a commercial marina on the harborfront property. The District, however, failed to disclose a restrictive covenant on the property that prohibited the commercial development of part of the property for ten years. Once Ocean learned of the covenant, the District provided repeated assurances that the covenant would be removed quickly and at the District's expense. Ocean continued to plan the project, obtained the necessary licensing, preleased the proper-

ty, guaranteed the loan payments for the necessary financing, and expended a large amount of money and effort to complete the development project.

Meanwhile, the owners of the restrictive covenant filed a lawsuit against the District and Ocean to enjoin the development of the project. In 1981, the owners successfully obtained a preliminary injunction. In 1982, Ocean informed the District that its losses on the project had reached $1.8 million due to the injunction. In 1983, the parties settled the restrictive covenant lawsuit, but the District refused to renegotiate Ocean's lease or cover any of Ocean's losses.

In January 1984, Ocean filed a lawsuit in California Superior Court for Ventura County against the District for breach of contract, deceit, and promissory estoppel. The parties continued to have difficulties with the terms of the lease and with the development of the property. In 1987, Ocean filed for reorganization under Chapter 11. The District secured an order from the bankruptcy court declaring that the lease between the District and Ocean had been rejected, and then evicted Ocean from the property and took control of the marina facilities. In 1988, Ocean converted the bankruptcy proceeding to Chapter 7, but the court permitted Ocean and its creditors to continue to pursue the lawsuit against the District.

At trial, Ocean argued that the District had breached the implied covenant of quiet enjoyment and the implied covenant of good faith and fair dealing. On September 25, 1990, a jury awarded Ocean $31,352,-595, which the trial judge later reduced to $16,971,767.

In 1991, Ocean recorded an abstract of judgment against the District. Ocean believed that its abstract of judgment created a judgment lien against the District and secured creditor status for itself. At the same time, the District recorded an "Extinguishment of Lien." The District then encumbered a portion of its real property in a series of transactions, one of which resulted in the District's giving a deed of trust against some of its property to Merchants Bank of Kansas City.

In April 1990 and pursuant to Ocean's Chapter 7 proceeding, Ocean sold and assigned its cause of action against the District to a new corporation formed by Ocean's former shareholders, Ventura Group Ventures ("VGV"), the appellant herein. In May 1993, a California appellate court affirmed VGV's verdict, *see Ocean Servs. Corp. v. Ventura Port Dist.*, 15 Cal.App.4th 1762, 1782, 19 Cal.Rptr.2d 750 (1993), but in an unpublished portion of the decision, reduced the award to $15,-560,169, plus costs and interest.

On August 20, 1997, VGV filed the instant action in California Superior Court for the County of Ventura to enforce the judgment. VGV sued the District, the County of Ventura, Merchants Bank of Kansas City, and other parties that VGV believed would contest the priority of VGV's judgment against the District. First, VGV sought a declaratory judgment that the District and the County were required under state law to pay the judgment either by selling property or levying additional taxes or assessments, or that in the alternative, VGV could execute against the District's property. Second, VGV asked for a writ of mandate against the District and the County in the amount of the judgment. VGV included a claim for slander of title against the individual attorneys for filing the Extinguishment of Lien. VGV also sought a determination that its abstract of judgment gave it priority over the District's other creditors.

Immediately thereafter, the District filed a Chapter 9 petition, and VGV's claims against the District were automatically stayed. The bankruptcy court granted VGV relief from the automatic stay, permitting VGV to go forward solely with its claim for a declaratory judgment to determine if VGV could force the District or the County of Ventura to levy a property tax in order to pay the judgment.

After VGV's complaint was filed, the Federal Deposit Insurance Corporation ("FDIC") became the receiver for Merchants Bank of Kansas City and, as a party defendant, removed the case to the U.S. District Court for the Central District of California. The district court then remanded the slander of title claims to state court. All that remained in the case was the claim for a declaratory judgment determining the rights and obligations of VGV, the District, and Ventura County regarding the payment of VGV's state court judgment, and a determination of whether an abstract of judgment against a public entity could create a judgment lien giving VGV priority over the District's other creditors.

In January 1997, pursuant to its grant of summary judgment to Ventura County and its final judgment after a bench trial, the district court held that: (1) Proposition 13 prohibited the County from levying an additional property tax to satisfy VGV's judgment, (2) Proposition 13 and California Revenue and Taxation Code § 95 prohibited the County from reallocating revenue generated from permissible property taxes to satisfy the judgment, (3) the District could not levy a special assessment to satisfy VGV's judgment, (4) VGV could not proceed with a writ of execution against the District's property, (5) VGV's abstract of judgment did not create a judgment lien for the purpose of establishing VGV's priority, and (6) the other creditors had superior liens to VGV.

The district court did hold that VGV could obtain a writ of mandate against the District for the purpose of satisfying the judgment, and that a court considering the issuance of the writ could order the District to sell some of its property to satisfy the judgment. The District did not cross-appeal this determination. VGV limited its Ninth Circuit appeal to the consideration of the first three issues listed in the preceding paragraph along with federal constitutional claims and agreed to dismiss its appeal as to all defendants except the District and the County.

In April 1998, the Chapter 9 bankruptcy court approved the District's modified plan of debt adjustment. As part of the plan, VGV received $7,739,821.23 pursuant to its unsecured status. Although the bankruptcy court noted the district court's determination against VGV, the modified plan provided that VGV retained the right to pursue its appeal of the district court's judgment in the Ninth Circuit. If the appeal is successful, the bankruptcy court stated:

> [T]he District will levy the tax as directed by the Ninth Circuit, or, if the subject proceedings are remanded, by the District Court so that the tax will be included in the real property tax bills issued by the Ventura County Tax Collector. If and when such taxes are collected by the County of Ventura and remitted to the District, the District shall distribute the funds as required by applicable law or order of court.

On December 10, 1998, the Chapter 9 proceeding was closed.

## IV. *The Need for Certification*

The salient issues in this case are ones purely of state law. The parties contend, and this panel agrees, that resolution of those issues will have a substantial effect on California law and the citizens of California. Accordingly, principles of comity suggest that those decisions should be made by California courts.

In addition, the answers to the certified questions will resolve the critical question in this case as to whether the Port District or the County of Ventura can be ordered to levy property taxes under California Harbors and Navigation Code § 6361 or § 6365(d)(2) to satisfy VGV's money judgment or whether Article XIII A of the California Constitution prevents the County or the District from levying property taxes to satisfy VGV's judgment based on the breach of implied covenants.

All claims for money or damages against a port district, such as the Ventura Port District, are governed by California Government Code § 900 *et seq. See* Cal. Harb. & Nav.Code § 6370. California Government Code § 970.2 states: "A local public entity shall pay any judgment in the manner provided in this article." Cal. Gov't Code § 970.2. "A writ of mandate is an appropriate remedy to compel a local public entity to perform any act required by this article." *Id.*

Section 970.4 directs the local public entity to pay the money judgment in the year it becomes final to the extent that funds are available, *see id.* § 970.4, but if the local public entity cannot do so, section 970.5 requires the local public entity to pay the judgment in the next fiscal year, *see id.* § 970.5, or in installments over the next ten years, *see id.* § 970.6. The local public entity must include in its budget a provision to repay all judgments, or if the local public entity receives all or some of its funding from another local public entity, the other local public entity also must include in its budget, equal to its pro rata share, an amount sufficient to permit the local public entity to pay all money judgments. *See id.* § 970.8.

Read alone, the statutory scheme provides that a court can issue a writ of mandate ordering a port district to allocate funds in its budget for the payment of a judgment. When the statutory scheme is read in conjunction with California Harbors and Navigation Code § 6361, however, VGV argues that a writ of mandate can issue to order Ventura County specifically to levy taxes in the amount of the judgment. This is because, each year, the board of port commissioners must furnish to the board of commissioners of the county in which it is situated,

[A]n estimate in writing of the amount of money needed for all purposes by the district during the ensuing fiscal year. Thereupon, it is the duty of the board of supervisors to levy a special tax, on all taxable property of the county lying within the district, sufficient in amount to raise that sum.

Cal. Harb. & Nav.Code § 6361.

As a defense, the defendants in this case, County of Ventura and the Port District, submit that Article XIII A of the California Constitution prevents the levy of any additional taxes beyond the one percent ad valorem limit. The relevant portions of Article XIII A are:

§ 1. Ad valorem tax on real property; maximum amount; application

(a) The maximum amount of any ad valorem tax on real property shall not exceed One percent (1%) of the full cash value of such property. The one percent (1%) tax to be collected by the counties and apportioned according to law to the districts within the counties.

(b) The limitation provided for in subdivision (a) shall not apply to ad valorem taxes or special assessments to pay the interest and redemption charges on (1) any indebtedness approved by the voters prior to July 1, 1978, or (2) any bonded indebtedness for the acquisition or improvement of real property approved on or after July 1, 1978, by two-thirds of the votes cast by the voters voting on the proposition.

Cal. Const. art. XIII A, § 1.

It is difficult to harmonize Article XIII A, California Harbors and Navigation Code § 6361, and California Government Code §§ 970, 971. Therefore, Article XIII A may have repealed by implication any other duty on the part of the District or the County to levy property taxes to satisfy VGV's judgment. In the absence of any case law, we would enforce Article XIII A, the constitutional provision, to the exclusion of the statutory provisions. Nonetheless, we recognize that a California court has barred application of Article XIII A when an inverse condemnation judgment was at issue. *See F & L Farm Co. v. City Council,* 65 Cal.App.4th 1345, 77 Cal.

Rptr.2d 360 (1998). VGV argues that *F & L Farm* should be extended to bar the enforcement of Article XIII A in this case to permit the County to satisfy its judgment by levying additional property taxes.

Related to this argument, VGV argues that Article XVI's involuntary obligation exception, discussed in *F & L Farm*, should be applied in the Article XIII A context. *See generally County of Los Angeles v. Byram*, 36 Cal.2d 694, 227 P.2d 4 (1951) (in bank); *Arthur v. City of Petaluma*, 175 Cal. 216, 165 P. 698 (1917); *Lewis v. Widber*, 99 Cal. 412, 33 P. 1128 (1893). At this time, the California courts have not extended the involuntary obligation exception of Article XVI in this manner. In addition, even if the exception were to apply in the Article XIII A context, VGV's judgment is a judgment for breach of the implied covenant of quiet enjoyment and the implied covenant of good faith and fair dealing and may not qualify as an "involuntary obligation."

The second certified question pertains to California Harbors and Navigation Code § 6365(d)(2). This section provides: "Notwithstanding any other provision of law, the district may levy and collect assessments and reassessments ... to pay ... [f]or the satisfaction of liabilities arising from projects." Cal. Harb. & Nav.Code § 6365(d)(2). VGV argued before our court that this provision provides statutory authority for the District to levy additional property taxes beyond Article XIII A's one percent limit in order to satisfy the judgment. The District has argued that the provision only entitles the District to levy special assessments, the definition of which precludes a levy to satisfy a judgment.

Although we recognize that California courts generally have held that Article XIII A does not limit the levy of special assessments, *see Sinclair Paint Co. v. State Bd. of Equalization*, 15 Cal.4th 866, 64 Cal.Rptr.2d 447, 937 P.2d 1350, 1354 (1997); *Solvang Mun. Improvement Dist. v. Board of Supervisors*, 112 Cal.App.3d 545, 556–57, 169 Cal.Rptr. 391 (1980);

*County of Fresno v. Malmstrom*, 94 Cal. App.3d 974, 985–86, 156 Cal.Rptr. 777 (1979), we note that the courts have defined special assessments very narrowly. In *Solvang*, the court defined a special assessment as:

> [A] charge imposed on particular real property for a local public improvement of direct benefit to that property, as for example a street improvement, lighting improvement, irrigation improvement, sewer connection, drainage improvement, or flood control improvement. The rationale of special assessment is that the assessed property has received a special benefit over and above that received by the general public. The general public should not be required to pay for special benefits for the few, and the few specially benefitted should not be subsidized by the general public.

112 Cal.App.3d at 552, 169 Cal.Rptr. 391. The California courts, however, have not specifically determined whether Article XIII A or the *Solvang* definition of a special assessment prevents the District from levying taxes to satisfy VGV's judgment under section 6365(d)(2).

Because of the obvious implications of the resolution of these issues on California state law and procedure, the panel respectfully requests the California Supreme Court to accept the certification. In addition, an answer to the certified questions is critical to the issues pending before this panel. This court agrees to follow the answers provided by the California Supreme Court.

### V. *Accompanying Materials*

The Clerk of Court has been ordered to provide all relevant briefs and excerpts of record with this request and to forward all under the official seal of the Ninth Circuit pursuant to Rule 29.5(c)-(d).