Opinion
 

 BROWN, J.
 

 We granted the request of the United States Ninth Circuit Court of Appeals for the answers to the following certified questions of law under rule 29.5 of the California Rules of Court:
 
 [1]
 

 “1. Does [a]rticle XIII A of the California Constitution (adopted in 1978 by statewide initiative as Proposition 13) prohibit a county from levying property taxes, in excess of the one percent limit, pursuant to California Harbors and Navigation Code [section] 6361 to pay a money judgment as required by California Government Code [sections] 970-971?
 

 “2. Does a port district created pursuant to California Harbors and Navigation Code [section] 6210 have independent authority to impose assessments under California Harbors and Navigation Code [section] 6365[, subdivision] (d)(2) in order to raise the funds needed to satisfy a judgment obtained against it?”
 
 (Ventura Group Ventures, Inc. v. Ventura Port Dist.
 
 (9th Cir. 1999) 179 F.3d 840, 841
 
 (Ventura Group Ventures).)
 

 I. Background
 

 A.
 
 Certification
 

 Rule 29.5(a) provides that we may answer questions of law certified to us by a federal court of appeals (or the court of last resort of any state), provided the certifying court requests the answer, the question may be determinative of a cause pending in the certifying court, and the decisions of the California Courts of Appeal or this court provide no controlling precedent concerning the certified question. The factors set forth in rule 29.5(a) are met here. The Ninth Circuit has requested that we answer the questions it posed; our answers to the questions will be determinative of part of the appeal pending before it, and there is no controlling California precedent.
 
 *1094
 
 Another factor weighing in favor of accepting the request, one that we “ordinarily considerf] in deciding whether to grant review of a decision of a California Court of Appeal or to issue an alternative writ or other order in an original matter” (rule 29.5(f)(1)), is that answering the questions certified will help settle important questions of law. (Rule 29.)
 

 B.
 
 Facts and Procedural
 
 History
 
 [2]
 

 Ventura Port District (District) was organized by the County of Ventura in 1952 as a local governmental entity to operate and develop the Ventura harbor. The District was created pursuant to Harbors and Navigation Code section 6210. The District is governed by a board of port commissioners pursuant to Harbors and Navigation Code section 6240.
 

 In 1979, the District leased real property along the harbor to Ocean Services Corporation (Ocean), a corporation that had agreed to develop a commercial marina on the harborfront property. The District, however, failed to disclose a restrictive covenant on the property that prohibited the commercial development of part of the property for 10 years. Once Ocean learned of the covenant, the District provided repeated assurances that the covenant would be removed quickly and at the District’s expense. Ocean continued to plan the project, obtained the necessary licensing, preleased the property, guaranteed the loan payments for the necessary financing, and expended a large amount of money and effort to complete the development project.
 

 Meanwhile, the landowners benefitting from the restrictive covenant filed a lawsuit against the District and Ocean to enjoin the project. In 1981, the owners successfully obtained a preliminary injunction. In 1982, Ocean informed the District that its losses on the project had reached $1.8 million due to the injunction. In 1983, the parties settled the restrictive covenant lawsuit, but the District refused to renegotiate Ocean’s lease or cover any of Ocean’s losses.
 

 In January 1984, Ocean filed a lawsuit in the Superior Court of Ventura County against the District for breach of contract, deceit, and promissory estoppel. The parties continued to have difficulties with the terms of the lease and with the development of the property. In 1987, Ocean filed for reorganization under chapter 11 of the United States Bankruptcy Code (11 U.S.C.). The District secured an order from the federal bankruptcy court
 
 *1095
 
 declaring that the lease between the District and Ocean had been rejected, and then evicted Ocean from the property and took control of the marina facilities. In 1988, Ocean converted the chapter 11 bankruptcy proceeding to a chapter 7 bankruptcy proceeding, but the court permitted Ocean and its creditors to continue to pursue the lawsuit against the District.
 

 At trial, Ocean argued that the District had breached the implied covenant of quiet enjoyment and the implied covenant of good faith and fair dealing. On September 25, 1990, a jury awarded Ocean $31,352,595, which the trial judge later reduced to $16,971,767.
 

 In 1991, Ocean recorded an abstract of judgment against the District. Ocean believed that its abstract of judgment created a judgment lien against the District and secured creditor status for itself. At the same time, the District recorded an “Extinguishment of Lien.” The District then encumbered a portion of its real property in a series of transactions, one of which resulted in the District’s giving a deed of trust against some of its property to Merchants Bank of Kansas City.
 

 In April 1990 and pursuant to Ocean’s chapter 7 proceeding, Ocean sold and assigned its cause of action against the District to a new corporation formed by Ocean’s former shareholders, Ventura Group Ventures (VGV), appellant herein. In May 1993, the Second District Court of Appeal affirmed VGV’s verdict
 
 (Ocean Services Corp. v. Ventura Port Dist.
 
 (1993) 15 Cal.App.4th 1762, 1782 [19 Cal.Rptr.2d 750]), but in an unpublished portion of the decision reduced the award to $15,560,169, plus costs and interest.
 

 On August 20, 1997, VGV filed the instant action in the Superior Court of Ventura County to enforce the judgment. VGV sued the District, the County of Ventura (County), Merchants Bank of Kansas City, and other parties that VGV believed would contest the priority of VGV’s judgment against the District. First, VGV sought a declaratory judgment that the District and the County were required under state law to pay the judgment either by selling property or levying additional taxes or assessments, or that in the alternative, VGV could execute against the District’s property. Second, VGV asked for a writ of mandate against the District and the County in the amount of the judgment. VGV included a claim for slander of title against the individual attorneys for filing the extinguishment of lien. VGV also sought a determination that its abstract of judgment gave it priority over the District’s other creditors.
 

 Immediately thereafter, the District filed a chapter 9 bankruptcy petition, and VGV’s claims against the District were automatically stayed. The
 
 *1096
 
 federal bankruptcy court granted VGV relief from the automatic stay, permitting VGV to go forward solely with its claim for a declaratory judgment to determine if VGV could force the District or the County to levy a property tax in order to pay the judgment.
 

 After VGV’s complaint was filed, the Federal Deposit Insurance Corporation became the receiver for Merchants Bank of Kansas City and, as a party defendant, removed the case to the United States District Court for the Central District of California. The federal district court then remanded the slander of title claims to the Ventura County Superior Court. All that remained in the federal case was the claim for a declaratory judgment determining the rights and obligations of VGV, the District, and the County regarding the payment of VGV’s state court judgment, and a determination of whether an abstract of judgment against a public entity could create a judgment lien giving VGV priority over the District’s other creditors.
 

 In January 1997, pursuant to its grant of summary judgment to the County and its final judgment after a bench trial, the federal district court held that: (1) article XIII A of the California Constitution (Proposition 13) prohibited the County from levying an additional property tax to satisfy VGV’s judgment; (2) Proposition 13 and Revenue and Taxation Code section 95 prohibited the County from reallocating revenue generated from permissible property faxes to satisfy the judgment; (3) the District could not levy a special assessment to satisfy VGV’s judgment; (4) VGV could not proceed with a writ of execution against the District’s property; (5) VGV’s abstract of judgment did not create a judgment lien for the purpose of establishing VGV’s priority; and (6) the other creditors had liens superior to VGV.
 

 The federal district court did hold that VGV could obtain a writ of mandate against the District for the purpose of satisfying the judgment, and that a court considering the issuance of the writ could order the District to sell some of its property to satisfy the judgment. The District did not appeal this determination. VGV limited its Ninth Circuit appeal to the consideration of the first three issues listed in the preceding paragraph, along with federal constitutional claims, and agreed to dismiss its appeal as to all defendants except the District and the County.
 

 In April 1998, the federal bankruptcy court approved the District’s modified chapter 9 plan of debt adjustment. As part of the plan, VGV received $7,739,821.23 as an unsecured creditor. Although the bankruptcy court noted the federal district court’s determination against VGV, the modified plan provided that VGV retained the right to pursue its appeal of the district
 
 *1097
 
 court’s judgment in the Ninth Circuit. If the appeal is successful, the bankruptcy court stated: “[T]he District will levy the tax as directed by the Ninth Circuit, or, if the subject proceedings are remanded, by the District Court so that the tax will be included in the real property tax bills issued by the Ventura County Tax Collector. If and when such taxes are collected by the County of Ventura and remitted to the District, the District shall distribute the funds as required by applicable law or order of court.”
 

 On December 10, 1998, the chapter 9 bankruptcy proceeding was closed.
 

 H. Discussion
 

 A.
 
 Question No. 1
 

 Again, the first question is: “Does [ajrticle XIII A of the California Constitution (adopted in 1978 by statewide initiative as Proposition 13) prohibit a county from levying property taxes, in excess of the one percent limit, pursuant to California Harbors and Navigation Code [section] 6361 to pay a money judgment as required by California Government Code [sections] 970-971?”
 
 ('Ventura Group Ventures, supra,
 
 179 F.3d at p. 841.)
 

 California Constitution, article XIII A, section l
 
 [3]
 
 provides: “(a) The maximum amount of any ad valorem tax on real property shall not exceed One percent (1%) of the full cash value of such property. The one percent (1%) tax to be collected by the counties and apportioned according to law to the districts within the counties. TO] (b) The limitation provided for in subdivision (a) shall not apply to ad valorem taxes or special assessments to pay the interest and redemption charges on (1) [indebtedness approved by the voters prior to July 1, 1978, or (2) [b]onded indebtedness for the acquisition ... of real property approved on or after July 1, 1978, by two-thirds of the votes cast by the voters voting on the proposition.”
 

 Government Code section 970.8, subdivision (a) provides that a district shall include in its budget each fiscal year sufficient funds to pay all judgments rendered against it. Harbors and Navigation Code section 6361 provides that a port district shall annually furnish the county board of supervisors with a written estimate of the amount of money the district will need “for all purposes” in the ensuing fiscal year, and “[^hereupon, it is the duty of the board of supervisors to levy a special tax, on all taxable property of the county lying within the district, sufficient in amount to raise that sum.”
 

 
 *1098
 
 1.
 
 Exception for Prior Indebtedness
 

 In its opening brief, VGV argued that this judgment constitutes an “indebtedness approved by the voters prior to July 1, 1978,” and is thus not subject to the 1 percent limit set out in article XIIIA because it comes within the exception stated in section 1, subdivision (b)(1) of that article. “Here, the local voters themselves approved the creation of the District in 1952 knowing that state law (i.e., Harb. & Nav. Code, § 6361) mandated that the County of Ventura would levy a special property tax each year up to the maximum tax rate specified in Harbors and Navigation Code [section] 6362 to cover the District’s outstanding liabilities.” An amicus curiae brief filed by Twenty-Eight California Cities in support of the District correctly observed that this argument was a “stretch of logic [that] would gut Proposition 13,” and VGV has abandoned it. In any event, VGV’s argument was meritless because the District’s debt occurred no earlier than 1979 when the lease with Ocean was executed, and so it did
 
 not
 
 arise prior to 1978 when Proposition 13 was adopted.
 

 2.
 
 Harbors and Navigation Code Section 6361
 

 VGV next contends Proposition 13 was not intended to repeal Harbors and Navigation Code section 6361. “The State Legislature is understandably concerned as much now as it was in 1937 that any port district formed in this state be financially sound. This concern is clearly one reason why the Legislature has left these statutes intact. If that key piece of this legislation, i.e., the pledge of taxing support, were impliedly deleted by Proposition 13, it would destroy the statutory framework the Legislature adopted in 1937 governing the formation and operation of local port districts that is essentially unchanged to the present. For this reason alone, it is not reasonable to conclude that Proposition 13 was intended to repeal Harbors and Navigation Code section 6361.”
 

 The District aptly characterizes pre-Proposition 13 practice under Harbors and Navigation Code section 6361 as “budgeting first, taxing later.” That is, as we have explained above, a port district was required to furnish the county board of supervisors with a written estimate of the amount of money the district would need in the coming fiscal year, and it was then the duty of the board “to levy a special tax, on all taxable property of the county lying within the district, sufficient in amount to raise that sum.” (Harb. & Nav. Code, § 6361.) If VGV is contending that in adopting Proposition 13, the voters intended to permit counties, on behalf of port districts, to continue to levy property taxes without regard to the 1 percent limit, VGV is plainly
 
 *1099
 
 wrong. Moreover, VGV’s argument appears to reveal a fundamental misunderstanding as to whose intent controls here. We may assume for the sake of argument that, as VGV contends, “[t]he State Legislature is understandably concémed as much now as it was in 1937 that any port district formed in this state be financially sound.” However, the question is what the
 
 voters
 
 intended when they adopted Proposition 13, and it is clear that, as far as they were concerned, the practice of “budgeting first, taxing later” was no longer acceptable. Harbors and Navigation Code section 6361 has been superseded by the statutes implementing article XIH A insofar as, where applicable, they are inconsistent. Article XIH A, section 1, subdivision (a) provides that the 1 percent tax collected by the counties is to be “apportioned according to law” to the districts within the counties. The Legislature read this language as conferring authority to legislate on the subject and to apportion the tax funds to local agencies and districts.
 
 (Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization
 
 (1978) 22 Cal.3d 208, 246 [149 Cal.Rptr. 239, 583 P.2d 1281]
 
 (Amador).)
 
 Formulae for the distribution of tax funds to local agencies and districts have been enacted by the Legislature. (See Rev. & Tax. Code, § 93 et seq.) Therefore, a district can no longer expect a county to levy taxes to raise whatever sum the district budget calls for. That those days are long gone should come as no surprise to VGV or anyone else.
 

 3.
 
 Judgments Resulting from Discretionary/Nondiscretionary Acts
 

 VGV’s fallback position is that, even if article XIH A otherwise limits a county’s taxing authority under Harbors and Navigation Code section 6361, it was not intended to apply to a judgment like this one, which VGV characterizes as a
 
 judgment resulting from a nondiscretionary act.
 
 “Proposition 13,” VGV asserts, “was not intended to repeal the carefully crafted statutes the Legislature had adopted just five years earlier to govern the payment of judgments of this nature.” The statutes upon which VGV relies are sections 2205 and 2271 of the Revenue and Taxation Code and sections 970.8 and 971 of the Government Code. We will first set out the statutes and then consider whether they support VGV’s position.
 

 Section 2271 of the Revenue and Taxation Code provides in pertinent part: “A local agency may levy, or have levied on its behalf, a rate in addition to the maximum property rate established pursuant to this chapter (commencing with Section 2201) to pay costs mandated by the federal government or
 
 costs mandated by the courts
 
 or costs mandated by initiative enactment, which are not funded by federal or state government.” (Italics added.)
 

 Section 2205 of the Revenue and Taxation Code provides in pertinent part: “ ‘Costs mandated by the courts’ do not include (i) costs incurred as a
 
 *1100
 
 result of a judgment in an eminent domain or condemnation proceeding, (ii) costs incurred in order to comply with a final court order mandating the specific performance, or awarding damages as a result of nonperformance, of any contract or agreement entered into after January 1, 1973, and (iii) costs incurred as a result of a final court order which requires a local agency or school district to comply with a state-mandated program or service enacted after January 1, 1973, which the court has determined that the local agency or school district has failed to comply with prior to such order.”
 

 Section 970.8, subdivision (a) of the Government Code provides: “Each local public entity shall in each fiscal year include in its budget a provision to provide funds in an amount sufficient to pay all judgments in accordance with this article.”
 

 Section 971, subdivision (c) of the Government Code provides: “For the purposes of Section 2271 of the Revenue and Taxation Code, taxes levied to pay pursuant to this article a judgment resulting from a nondiscretionary act are levied to pay costs mandated by the courts.” Section 971, subdivision (a)(1) of the Government Code provides: “ ‘Judgment resulting from a discretionary act’ means a judgment arising from a liability which the local public entity has discretion to incur or not to incur and includes a judgment rendered in an eminent domain proceeding and a judgment requiring specific performance of a contractual obligation or awarding damages for failure to perform a contractual obligation.”
 

 As the statutes make clear, even before Proposition 13, the
 
 nondiscretionary
 
 obligations for which an agency was permitted to tax over the limit did not include all court judgments, on the theory that the duty to pay a judgment is mandatory rather than discretionary. Instead, the discretionary/ nondiscretionary distinction focused on the voluntary or involuntary nature of the
 
 original liability
 
 that
 
 resulted
 
 in the court judgment. Judgments founded in contract and eminent domain were discretionary, while judgments founded in tort and inverse condemnation were nondiscretionary.
 

 This judgment was founded in contract. It resulted from two discretionary acts: The District’s decision to enter into a ground lease with Ocean, and the District’s subsequent decision to violate the implied covenant of good faith and fair dealing.
 
 (Ocean Services Corp.
 
 v.
 
 Ventura Port Dist., supra,
 
 15 Cal.App.4th at pp. 1780-1781.) Therefore, the judgment is not covered by the statutory exemption for “
 
 ‘[cjosts
 
 mandated by
 
 the
 
 courts.’ ” (Rev. & Tax. Code, §§ 2205, 2271; Gov. Code, §§ 970.8, 971.) Because VGV’s argument does not withstand statutory analysis, we need not reach the
 
 *1101
 
 question whether an exception for judgments resulting from nondiscretionary acts should be read into article XIII A. (See
 
 Amador, supra,
 
 22 Cal.3d at p. 233 [“As a general rule, courts will not reach constitutional questions ‘unless absolutely necessary to a disposition’ of the case before them”].)
 

 4.
 
 Constitutional Questions
 

 VGV contends article XHI A is inconsistent with the United States Constitution’s guarantee clause, which directs the United States to “guarantee to every State in this Union a Republican Form of Government.” (U.S. Const., art. IV, § 4.) In most of the cases in which the United States Supreme Court has been asked to apply the guarantee clause, the high court has found the claims presented to be nonjusticiable under the political question doctrine. (New
 
 York v. United States
 
 (1992) 505 U.S. 144, 184 [112 S.Ct. 2408, 2432-2433, 120 L.Ed.2d 120].) However, in
 
 Amador, supra,
 
 22 Cal.3d at page 227, we squarely rejected the claim that article XIII A would “result in a change from a ‘republican’ form of government (i.e., lawmaking by elected representatives) to a ‘democratic’ governmental plan (i.e., lawmaking directly by the people).” “Contrary to petitioners’ assertion . . . we are convinced that article XIII A . . . does not change our basic governmental plan. Following the adoption of article XIII A both local and state government will continue to function through the traditional system of elected representation. Other than in the limited area of taxation, the authority of local government to enact appropriate laws and regulations remains wholly unimpaired.”
 
 (Amador,
 
 at p. 227.) VGV’s efforts to distinguish
 
 Amador
 
 are unavailing. At bottom, what VGV is complaining of is not that article XHI A undermines this state’s republican form of government, but that it permits local voters to deny VGV recovery on its judgment in violation of due process of law and the takings clause.
 

 VGV’s due process argument is itself a makeweight, consisting solely of an analogy to criminal law, in which VGV compares its situation to that of a criminal defendant who has been acquitted by a jury only to find that the voters can override the jury’s verdict. The analogy is not helpful. Article XIII A does not nullify the judgment against the District. It simply restricts the ability of the District to raise taxes in order to pay the judgment. VGV is not thereby denied all means of satisfying its judgment. Indeed, the bankruptcy court awarded VGV almost $8 million for assigned rights it purchased from Ocean in 1990, long after Proposition 13 was adopted. Ironically, in the name of due process, VGV would deny districts the protections afforded them under chapter 9 of the federal Bankruptcy Code.
 

 Finally, VGV contends that an exception for judgments must be read into article XHI A in order to avoid a construction that would permit takings in violation of the Fifth Amendment to the United States Constitution.
 

 
 *1102
 
 VGV’s argument rests entirely upon a recent decision of the Court of
 
 Appeal—F & L Farm Co. v. City Council
 
 (1998) 65 Cal.App.4th 1345 [77 Cal.Rptr.2d 360]
 
 (F & L Farm Co.). F & L Farm Co.
 
 arose from an inverse condemnation action brought by several farmers against the City of Lindsay. The city had for years accepted saline industrial wastewater from an olive processing facility, holding the wastewater first in percolation ponds and later in ,lined evaporation ponds. Eventually much of the salt from the wastewater percolated into the groundwater through the percolation ponds and through holes in the liners of the evaporation ponds, causing injury (lost profits from crops and permanent reduction in land value) to farms in the vicinity of the ponds. The farmers obtained judgments totaling $3 million, and the city appealed, claiming that articles XIII A, XIII B, XIII C, and XVI so limited its ability to tax and spend as to override its statutory duty to pay the judgments. The Court of Appeal framed the issue before it as follows: “When a city in California has deprived California residents of constitutionally protected property interests and a judgment has been entered against it to compensate the residents for the wrongs committed, may the city simply refuse to pay the judgment on the basis that it has no spare money? We think not.”
 
 (F & L Farm Co.,
 
 at p. 1347.)
 

 F & L Farm Co.
 
 is distinguishable on two grounds. First,
 
 F & L Farm Co.
 
 involved a judgment founded in inverse condemnation, and as we have explained above, judgments founded in tort and inverse condemnation, unlike judgments founded in contract and eminent domain,
 
 are
 
 covered by the statutory exemption for “ ‘[c]osts mandated by the courts.’ ” (Rev. & Tax. Code, §§ 2205, 2271; Gov. Code, §§ 970.8, 971.) Second, unlike the City of Lindsay, the District here has not been permitted to avoid satisfaction of VGV’s judgment on the ground it “has no spare money.”
 
 (F & L Farm Co., supra,
 
 65 Cal.App.4th at p. 1347.) To the contrary, as a result of the bankruptcy proceeding, VGV has received nearly $8 million, half of the sum awarded it. The discharge of the District’s debts in a bankruptcy proceeding cannot reasonably be construed as a taking in violation of the Fifth Amendment to the United States Constitution.
 

 The analysis of article XIII A in
 
 F & L Farm Co.
 
 got off on the wrong track because the case focused on
 
 whether,
 
 rather than
 
 how,
 
 the City was required to satisfy the judgment.
 
 F & L Farm Co.
 
 got the
 
 whether
 
 right, but it got the
 
 how
 
 wrong. That is, article XIII A is most assuredly not a license to “stiff’ judgment creditors with impunity. The bankruptcy award of almost $8 million against the District here is proof of that. However, the fact that article XIII A does not absolutely shield a local public entity from a judgment creditor does not mean that a court can compel a county to levy
 
 *1103
 
 property taxes in excess of article XIII A’s 1 percent limit in order to satisfy the judgment.
 

 In concluding that the judicially created nondiscretionary debt exception should be imported from article XVI, section 18 to article XIII A, the Court of Appeal in
 
 F & L Farm Co.
 
 relied principally upon the canon that a statute (or constitutional provision) susceptible of several interpretations should be construed so as to avoid serious constitutional problems.
 
 (F & L Farm Co., supra,
 
 65 Cal.App.4th at p. 1353.) This canon is beside the point here, though, for as we have just concluded, the constitutional challenges raised by VGV are meritless.
 

 Also beside the point, and for the same reason, is the analysis in
 
 F & L Farm Co.
 
 of voter intent in adopting Proposition 13. On the one hand, the Court of Appeal conceded that neither the language nor the history of Proposition 13 gave “ ‘any indication whatsoever that there was any thought or consideration given to the potential impact ... on the subject matter at hand,’ that is, payment of inverse condemnation judgments.”
 
 (F & L Farm Co., supra,
 
 65 Cal.App.4th at p. 1354.) On the other hand, the Court of Appeal found the general tenor of the ballot arguments in favor of the proposition, which the court characterized as having a “ ‘populist’ ” flavor, inconsistent with denying relief to the judgment creditors because “[t]he entire context of modem ‘takings’ theory shares this same populist, antigovemment philosophical base.”
 
 (Ibid.)
 
 “We cannot rationally conclude that the voters, in enacting the initiative limitations on ‘big government,’ intended to empower these same governments to damage private property with impunity and without effective means of compelling the payment of just compensation to injured citizens.”
 
 (Ibid.)
 
 The flaw in the court’s reasoning, as we have explained, lies in its .assumption that a city will be free to damage private property with impunity unless judgment creditors can compel the county to satisfy the judgment by levying taxes in excess of article XIII A’s 1 percent limit.
 

 To attack the same point from a different angle; Proposition 13 put local government on a strict budget and thus required it to make painful choices. In
 
 F & L Farm Co., supra,
 
 65 Cal.App.4th at page 1348, the Court of Appeal was unwilling to excuse payment of the judgments on the ground the City of Lindsay would suffer “ ‘undue hardship.’ ” However, the court did apparently accept the underlying premise of the city’s argument—that it should not be forced to make tough decisions. Thus, to permit the city to pay the judgments without making painful choices, the court held article XIII A inapplicable to judgments. In fact, the options before the court were not
 
 *1104
 
 restricted to letting the city walk away from the judgments or letting it raise extra money by levying property taxes in excess of the 1 percent limit established by article XIII A. The city could not, consistent with Proposition 13, avoid making painful choices, but it could have mitigated the pain if it had accepted the offer of the farmers to pay the judgments in installments pursuant to Government Code section 970.6.
 
 (F & L Farm Co.,
 
 at p. 1349, fn. 3.) Another option, not addressed in
 
 F & L Farm Co.,
 
 is that the City of Lindsay might have qualified for bankruptcy protection, as did the District here. Therefore, we disapprove
 
 F & L Farm Co., supra,
 
 65 Cal.App.4th 1345, insofar as it conflicts with the views expressed herein.
 

 In summary, we answer the first of the certified questions by advising the Ninth Circuit that, under the facts of this case, article XIII A does prohibit a county from levying property taxes in excess of 1 percent to pay a money judgment under Harbors and Navigation Code section 6361 and Government Code sections 970 to 971.
 

 B.
 
 Question No. 2
 

 To repeat, the second question certified to us by the Ninth Circuit is; “Does a port district created pursuant to California Harbors and Navigation Code [section] 6210 have independent authority to impose assessments under California Harbors and Navigation Code [section] 6365 [, subdivision] (d)(2) in order to raise the funds needed to satisfy a judgment obtained against it?”
 
 (Ventura Group Ventures, supra,
 
 179 F.3d at p. 841.)
 

 The Ninth Circuit emphasized that its phrasing of the issues should not restrict our consideration
 
 (Ventura Group Ventures, supra,
 
 179 F.3d at p. 841) and it is helpful to unpack the general and specific questions embedded in this query. The first question is a general one: Does
 
 a
 
 port district have such authority? The second question is specific: Does
 
 this
 
 port district have such authority under the circumstances shown here?
 

 The answer to the first question is
 
 yes.
 
 Generally speaking, a port district created pursuant to Harbors and Navigation Code section 6210 does have independent authority to impose assessments under Harbors and Navigation Code section 6365, subdivision (d)(2) in order to raise the funds needed to satisfy a judgment obtained against it,
 
 so long as the assessments satisfy the: applicable statutory and constitutional requirements.
 

 However, the answer to the second question is
 
 no.
 
 Under the circumstances of this case, the statutory and constitutional requirements for an assessment are not met. The principal requirement that is unsatisfied, as we
 
 *1105
 
 explain below, is that an assessment
 
 specially benefit
 
 the parcels upon which it is levied.
 

 1.
 
 The Statutory Framework
 

 Section 6365, subdivision (d)(2) of the Harbors and Navigation Code provides: “Notwithstanding any other provision of law, the district may levy and collect assessments and reassessments in the same manner as provided in Article 3 (commencing with Section 51320) of Chapter 2 of Part 7 of Division 15 of the Water Code, to pay any or all of the following: [f] . . . [H] (2) For the satisfaction of liabilities arising from projects.”
 

 Section 51323 of the Water Code provides: “The commissioners shall view and fix upon the district land an assessment valuation per acre for each parcel which is
 
 in proportion to the benefits to be derived
 
 from the continuance in operation of the district reclamation works.” (Italics added.)
 

 Sections 51329 to 51334 of the Water Code establish procedures for an aggrieved person to file with the county board of supervisors a written objection to the assessment valuations, for the board of supervisors to conduct a hearing on objections and to modify or amend the assessment valuations, and for an aggrieved person to file an action in superior court to have the assessment valuations corrected, modified, or annulled.
 

 2.
 
 The Constitutional Framework
 

 In 1996, Proposition 218 was approved by the voters in a statewide initiative. It added two articles to the California Constitution that govern the procedures to be followed by local governments wishing to adopt or increase taxes, assessments, fees, or charges. Article XIII C deals with taxes, and article XIII D deals with assessments, fees, and charges.
 

 Section 3, subdivision (a) of article XIII D provides that all assessments must conform to the requirements of that article. Section 4 of article XIII D provides that no assessment is to be imposed on a parcel which exceeds the reasonable cost of the proportional special benefit conferred upon the parcel, that only special benefits are assessable, and that the agency which proposes to levy the assessment must separate the general benefits from the special benefits to be conferred on the parcel. Section 2, subdivision (i) of article XIII D defines “ ‘special benefit’ ” as “a particular and distinct benefit over and above general benefits conferred on real property located in the district or to the public at large. General enhancement of property value does not constitute ‘special benefit.’ ”
 

 
 *1106
 
 Section 4 of article XIII D sets out the procedures to be followed by an agency proposing to levy an assessment. All assessments are to be supported by a detailed engineer’s report.
 
 (Id.,
 
 § 4, subd. (b).) Notice of the amount of the proposed assessment for each identified parcel is to be mailed to the record owner
 
 (id.,
 
 subd. (c)), the notice is to include a ballot on which the owner may indicate support or opposition for the proposed assessment
 
 (id.,
 
 subd. (d)), and, not less than 45 days after the mailing, a public hearing is to be held at which the agency proposing to levy the assessment shall consider any protests against it and tabulate the ballots
 
 (id.,
 
 subd. (e)). The agency may not impose an assessment if there is a majority protest
 
 (ibid.),
 
 and in a legal action contesting the validity of an assessment, the agency has the burden of demonstrating that the property in question would receive a special benefit and that the amount of the contested assessment is proportional to, and no greater than, the benefit conferred
 
 (id.,
 
 subd. (f)).
 

 Our decisions prior to its adoption were consistent with Proposition 218 in requiring that an improvement that was the subject of a special assessment had to
 
 specially benefit
 
 the assessed property. That distinguished a special assessment from a special tax. A special assessment was levied against real property particularly and directly benefited by a local improvement in order to pay the cost of that improvement, while a special tax was not required to specially benefit the taxed property.
 
 (Knox v. City of Orland
 
 (1992) 4 Cal.4th 132, 142 [14 Cal.Rptr.2d 159, 841 P.2d 144].) Because the rationale of a special assessment was that the assessed property had received or would receive a special benefit over and above that received by the general public
 
 (ibid.),
 
 the amount of the assessment could not exceed the benefit to the property
 
 (County of Fresno
 
 v.
 
 Malmstrom
 
 (1979) 94 Cal.App.3d 974, 984 [156 Cal.Rptr. 777]).
 

 3.
 
 Special Benefit Lacking Here
 

 VGV contends that, under the circumstances of this case, the linkage between special assessments and special benefits should be reconsidered. “The line between special assessments and special taxes articulated by the courts [citation] becomes blurred when considering assessments levied by a local port district which was created to bestow a benefit on all property within its boundaries. A port district formed under Harbors and Navigation Code section 6200 et seq. can only include, within its boundaries,
 
 Land which will be benefitted by the creation and operation of the district.’
 
 (Italics added.) (See Harb. & Nav. Code, § 6217.) The local voters themselves declared in 1952, when the District was formed, that
 
 all
 
 real property within the District’s taxing boundaries would be benefitted by the ‘creation
 
 and
 
 
 *1107
 
 operation’ of the Ventura Harbor. In light of this indisputable fact, the Legislature was completely justified in concluding that
 
 all
 
 lands within a port district would be benefitted by the
 
 continued operation
 
 of a public improvement of this nature.”
 

 VGV’s argument proves too much. If everything is special, then nothing is special. That is, the presumption that every project undertaken by a port district is equally beneficial to all of the properties within the district would effectively nullify the requirement that an assessment valuation be fixed “per acre for each parcel which is in proportion to the benefits to be derived from” the project. (Wat. Code, § 51323; see Harb. & Nav. Code, § 6365, subd. (d)(2).) Moreover, because of the failure of the commercial marina project, there is no means of fixing an assessment valuation per acre for each parcel in proportion to the benefits to be derived from the “continuance in operation” of the project as required by Water Code section 51323.
 

 Finally, VGV repudiates a bedrock requirement of article XIIID—that the owners of property upon which an agency proposes to levy an assessment be given a right to vote on it. (Art. XIII D, § 4.) The reason VGV cannot concede the voter approval requirement is not far to seek. “One thing on which the District, the County and VGV agree is that if Proposition 13 and Proposition 218 are interpreted to require [voter approval] before taxes or assessments can be levied to pay the judgment, it will not be paid. As VGV acknowledged in petitioner’s brief on the merits . . . : ‘All those entitled to vote on whether the judgment will be paid will benefit by lower taxes if they vote to deprive the judgment creditor of recovery on his judgment.’ ”
 

 VGV argues that, by providing in Harbors and Navigations Code section 6365, subdivision (d)(2) that assessments may be levied for the “satisfaction of liabilities arising from projects,” the Legislature “must have thought that prompt payment of debts does in fact confer a special benefit on the lands within the district.” VGV’s argument misses the point. Under article XIIID, that a proposed improvement would confer special benefits upon the landowners within a district is a necessary condition for the levying of a special assessment, but it is not a sufficient one. That is, even if the payment of the district’s debt would confer special benefits on the properties within the district, the property owners would still have the right to vote on the question whether they wished to obtain the special benefits by paying the debt. Proposition 218 was quite clear about the fact that its provisions were to be “liberally construed to effectuate its purposes of limiting local government revenue and
 
 enhancing taxpayer
 
 consent.” (Ballot Pamp., Gen. Elec. (Nov. 5, 1996) text of Prop. 218, § 5, p. 109, italics added, and reprinted in
 
 *1108
 
 Historical Notes, 2A West’s Ann. Cal. Const. (2001 supp.) foil. art. XIII C, p. 33.)
 

 In conclusion, we answer the second of the questions certified by the Ninth Circuit as follows: A port district created pursuant to Harbors and Navigation Code section 6210 does have independent authority to impose assessments under Harbors and Navigation Code section 6365, subdivision (d)(2) in order to raise the funds needed to satisfy a judgment obtained against it,
 
 so long as the assessments satisfy the applicable statutory and constitutional requirements.
 
 However, this port district may not impose an assessment to raise the funds to satisfy the judgment in question here because the assessment would not
 
 specially benefit
 
 the parcels upon which it would be imposed.
 

 George, C. J., Mosk, J., Kennard, J., Baxter, J., Werdegar, J., and Chin, J., concurred.
 

 Appellant’s petition for a rehearing was denied March 28, 2001.
 

 [1]
 

 All further references to rules are to the California Rules of Court unless otherwise indicated.
 

 [2]
 

 The entire factual and procedural history is adopted from the certification request,
 
 Ventura Group Ventures, supra,
 
 179 F.3d at pages 841-843.
 

 [3]
 

 All article references are to the California Constitution unless otherwise indicated.